DECISION AND JOURNAL ENTRY
This cause was heard upon the record in the trial court. Each error assigned has been reviewed and the following disposition is made:
 {¶ 1} Appellant, Lachurn Terry, appeals from his convictions in the Summit County Court of Common Pleas. This Court affirms.
 I. {¶ 2} Larry Belton was shot and killed in the early morning hours of October 30, 2004 in his apartment. Akron police immediately began their investigation by speaking with Belton's live-in girlfriend, Sheryl McCalister. McCalister was able to identify one of the men present at the time of the shooting. This man was later identified as Appellant, Lachurn Terry. In addition, McCalister identified the sole female defendant in the apartment, Kristie Guiser. *Page 2 
Police learned that Guiser was the girlfriend of Daryl Heard. Akron police eventually located and arrested Guiser and Heard. Upon her arrest, Guiser was interviewed on multiple occasions by Akron police detectives. Guiser revealed to the detectives that Terry, Heard, and a man later identified as Gregory Hilliard, had robbed and killed Belton. Once police had identified the final suspects, McCalister was shown photo arrays which contained Heard and Hilliard. McCalister positively identified both Hilliard and Heard from the arrays.
 {¶ 3} Heard, Guiser, Hilliard, and Terry were indicted on the following counts: one count of aggravated murder in violation of R.C.2903.01(B); two counts of murder in violation of R.C. 2903.02(B); one count of aggravated robbery in violation of R.C. 2911.01(A)(1); and one count of having weapons under disability in violation of R.C. 2923.13. The charges for aggravated murder, murder, and aggravated robbery each contained a firearm specification.
 {¶ 4} On June 1, 2005, a jury trial commenced against Heard, Hilliard, and Terry. Prior to trial, Guiser had entered into a plea agreement and agreed to testify against the remaining defendants. The jury convicted Heard and Hilliard on each count in the indictment. The jury acquitted Terry on the having a weapon under disability charge and the firearm specifications, but convicted him on the remaining counts in the indictment. The trial court, thereafter, sentenced the defendants accordingly. Terry was sentenced to life imprisonment on the aggravated murder conviction and ten years incarceration for the aggravated *Page 3 
robbery conviction. The trial court ordered that Terry serve his sentences concurrently. Terry has appealed his convictions, raising two assignments of error for review.
 II. ASSIGNMENT OF ERROR I "THE TRIAL COURT ERRED AND ABUSED ITS DISCRETION WHEN IT FAILED TO NOTIFY COUNSEL THAT TWO JURORS WERE SLEEPING DURING THE PRESENTATION OF EVIDENCE. THIS RESULTED IN A DENIAL OF TERRY'S RIGHT TO A FAIR AND IMPARTIAL JURY UNDER THE SIXTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION."
 {¶ 5} In his first assignment of error, Terry contends that the trial court abused its discretion when it failed to notify counsel that two jurors were sleeping during the presentation of evidence. Terry argues that this resulted in a denial of his right to a fair and impartial jury under the Sixth and Fourteenth Amendments to the U.S. Constitution. We disagree.
 {¶ 6} Terry's assignment of error concerns the following exchange between counsel for both parties and the judge regarding the State's request to play a four hour tape of one of the witnesses' prior statements.
 "The Court: Today you're going to get Detective Bell and the tape and finish with Miss Guiser. You're going to play this tape of Lachurn Terry?
 "The State: Miss Guiser.
 "The Court: How long, is this long? What's the point of that, please? *Page 4 
 "The State: Because everything he's been cross-examining her has been taken, first of all, out of context. They have — now they have to hear what she said. I offered to play it before he did all this.
 "The Court: It's your case. He doesn't have to play it if you want to. You can be rehabilitated without playing the tape, can't you? We have four hours of tape of her and three hours of Terry tomorrow. Anybody looking at the jury at all during all this?
 "Defense counsel: Judge, I'm sorry if I interrupt. With all due respect, Judge. I think if the Court sees someone sleeping, we've got to take a break, Judge.
 "The Court: You can't because they start sleeping, the two of them sleeping from the moment we get here till the moment we take a break. It's not my job to keep them awake.
 "Defense counsel: I think it is.
 "The Court: My point is the other 12 who are alert have started to look at the ceiling, they're looking at their hands. I mean, it's not my job to keep them interested. That would be your job. But if you think that there is no way to rehabilitate without playing an entire tape as opposed to just giving context to some of the statements. That's what you're telling me?
 "The State: That's our opinion.
 "The Court: Well, all right. Good luck."
 {¶ 7} Terry contends that this exchange establishes that two jurors were sleeping during several hours of testimony. He argues that these jurors' acts constitute misconduct. Terry asserts that the trial court abused its discretion in failing to correct the prejudice caused by the jurors' misconduct.
 {¶ 8} The Ohio Supreme Court has held that "[t]he trial judge is in the best position to determine the nature of the alleged jury misconduct and the appropriate remedies for any demonstrated misconduct." (Internal citation and quotations *Page 5 
omitted.) State v. McKnight, 107 Ohio St.3d 101, 2005-Ohio-6046, at ¶ 184. More specifically, the Ohio Supreme Court has determined that "a trial court has considerable discretion in deciding how to handle a sleeping juror." Id. Further, "`[t]here is no per se rule requiring an inquiry in every instance of alleged [juror] misconduct.'" State v.Sanders (2001), 92 Ohio St.3d 245, 253, quoting United State v.Hernandez, 921 F.2d 1569, 1577 (C.A.11, 1991).
 {¶ 9} The Ohio Supreme Court has found, as here, that where the defense did not expressly request the alleged juror misconduct to be remedied at trial or express some form of dissatisfaction with the way the trial court handled the matter, in the absence of plain error, the claim is waived. McKnight, supra, at ¶ 185, citing State v. Childs
(1968), 14 Ohio St.2d 56, paragraph three of the syllabus;Sanders, 92 Ohio St.3d at 253. The record reflects that Terry failed to preserve this argument for appeal. Terry only made observations regarding what he thought the judge was required to do in the event a juror was sleeping. Terry failed to object and state his dissatisfaction with the way the trial court handled the sleeping jurors and further, failed to request that the court remedy the alleged juror misconduct. His counsel's statement "if the court sees someone sleeping, we've got to take a break, Judge" can be regarded as an observation and comment regarding future conduct. This discussion at sidebar ostensibly constitutes a break from the presentation of evidence. Further, there is no assertion that any jurors were sleeping thereafter. *Page 6 
 {¶ 10} Pursuant to Crim.R. 52(B) "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." "Notice of plain error `is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice.'" State v. Keener, 11th Dist. No 2005-L-182, 2006-Ohio-5650, at ¶ 19, quoting State v. Long (1978),53 Ohio St.2d 91, 97. As such, "[p]lain error exists only where the results of the trial court would have been different without the alleged error."Keener, at ¶ 19.
 {¶ 11} We find no plain error here. As stated above, "a trial court has considerable discretion in determining how to handle a sleeping juror." McKnight, 107 Ohio St.3d at ¶ 184. There is only an assertion by the trial court that two of the jurors were sleeping. The defense has provided no evidence that these jurors were actually sleeping as he failed to ask the court to identify or voir dire the jurors. Id. at ¶ 187, citing Sanders, 92 Ohio St.3d at 253; Keener, supra, at ¶ 27. Instead, defense counsel allowed the trial to proceed without further discussion of the issue. There is no evidence in the record to even establish which jurors were allegedly sleeping. It is entirely possible that the sleeping jurors were alternate jurors.
 {¶ 12} Moreover, Terry has provided no evidence of prejudice.McKnight, supra, at ¶ 187. Here, there is no actual evidence that these jurors missed large or critical portions of the trial. Id., citingSanders, 92 Ohio St.3d at 253 (affirming *Page 7 
conviction where there was no evidence that the allegedly sleeping juror missed large or critical portions of the trial). Terry failed to make a record to support his assertion on appeal that these jurors missed "critical" testimony. As the Seventh Appellate District has observed, "[o]ne cannot sit on his rights, hope for a favorable jury verdict and after receiving an unfavorable verdict, finally assert an issue which was easily remedied at the time of its inception." State v.Brletich (June 28, 2000), 7th Dist. No. 98 CO 84, at *3.
 {¶ 13} While we find that Terry has failed to establish that the trial court's actions constituted plain error, nonetheless, we remain mindful that judges have a duty to maintain "liberty under law." E. W. ScrippsCo. v. Fulton (1955), 100 Ohio App. 157, 168. Judges occupy a gate-keeping role in the courtroom. "In regard to the examination of witnesses, the trial judge is something more than a mere umpire or sergeant at arms to preserve order in the courtroom; he has active duties to perform in maintaining justice and in seeing that the truth is developed[.]" State v. Davis (1992), 79 Ohio App.3d 450, 456.
 {¶ 14} Without more evidence, i.e., that one or more jurors were actually sleeping and for how long, we cannot say the trial court's failure to notify counsel that the jurors were sleeping constituted plain error. See State v. McConkey, 11th Dist. No. 2004-A-0017,2005-Ohio-6580, at ¶ 25. Terry's first assignment of error is without merit.
 ASSIGNMENT OF ERROR II *Page 8 "THE TRIAL COURT ERRED IN INSTRUCTING THE JURY THAT IT HAD TO DETERMINE THE `GUILT OR INNOCENCE OF THE DEFENDANTS' WHICH CONFUSED AND MISLEAD [SIC] THE JURY AND PLACED AN UNDUE BURDEN ON 
TERRY IN VIOLATION OF THE FOURTEENTH AMENDMENT DUE PROCESS CLAUSE[.]"
 {¶ 15} In his second assignment of error, Terry asserts that the trial court erred in instructing the jury that it had to determine the "guilt or innocence of the defendants" which confused and misled the jury and placed an undue burden on Terry in violation of his Fourteenth Amendment right to due process. We disagree.
 {¶ 16} A trial court must charge a jury with instructions that are a correct and complete statement of the law. Marshall v. Gibson (1985),19 Ohio St.3d 10, 12. However, the precise language of a jury instruction is within the discretion of the trial court. Youssef v. Parr, Inc.
(1990), 69 Ohio App.3d 679, 690. In reviewing jury instructions on appeal, this Court has previously stated:
 "[A]n appellate court reviews the instructions as a whole. If, taken in their entirety, the instructions fairly and correctly state the law applicable to the evidence presented at trial, reversible error will not be found merely on the possibility that the jury may have been misled. Moreover, misstatements and ambiguity in a portion of the instructions will not constitute reversible error unless the instructions are so misleading that they prejudicially affect a substantial right of the complaining party." (Citations omitted.) Wozniak v. Wozniak (1993), 90 Ohio App.3d 400, 410; see, also, Kokitka v. Ford Motor Co. (1995), 73 Ohio St.3d 89, 93.
 {¶ 17} A trial court has no obligation to give jury instructions in the language proposed by the parties, even if the proposed instruction is an accurate *Page 9 
statement of the law. Henderson v. Spring Run Allotment (1994),99 Ohio App.3d 633, 638. "Instead, the court has the discretion to use its own language to communicate the same legal principles." Id. Thus, absent an abuse of discretion, this court must affirm the trial court's language of the jury instructions. The phrase "abuse of discretion" connotes more than an error of judgment; rather, it implies that the trial court's attitude was arbitrary, unreasonable, or unconscionable. Blakemore v.Blakemore (1983), 5 Ohio St.3d 217, 219. When applying the abuse of discretion standard, an appellate court may not substitute its judgment for that of the trial court. Pons v. Ohio State Med. Bd. (1993),66 Ohio St.3d 619, 621.
 {¶ 18} Terry asserts that the trial court improperly instructed the jury that it was confined to determining the "guilt or innocence" of the defendants. The record reflects that Terry objected to this instruction. On appeal, Terry contends that this instruction fell short of the required standard because in Ohio, "reasonable doubt" requires the jury to decide only the guilt of the defendant, not the guilt or innocence.
 {¶ 19} The record reflects that when the trial court instructed the jury on the elements of each crime, the court informed the jurors that the State had to prove the elements beyond a reasonable doubt. Terry acknowledges that the trial court properly instructed the jury regarding reasonable doubt when it stated:
 "The defendant is presumed to be innocent until his guilt is established beyond a reasonable doubt. The defendant must be acquitted unless the State produces evidence which convinces you *Page 10 
beyond a reasonable doubt of every essential element of the crime charged."
 {¶ 20} The Ohio Supreme Court, in State v. Jones (2001),91 Ohio St.3d 335, 348-49, addressed this precise issue, finding that such an instruction did not prejudice the defendant when the jury had been properly instructed regarding reasonable doubt:
 "Finally, appellant argues that the trial court improperly shifted the burden of proof from the state to the defense when it instructed the jury to deliberate on the guilt `or innocence' of appellant. The trial court instructed the jury that in the guilt phase of the trial they should `not consider at this time or in any way discuss the subject matter of punishment.' The court instructed the jury that its duty was `confined to the determination of the guilt or innocence of the defendant.' Appellant contends that a reasonable jury would have understood this instruction to mean that the defendant bore the burden of putting forward evidence of his innocence.
 "We disagree with appellant's suggestion that the trial court's instruction effectively shifted the burden of proof from the state to the defendant. Any reasonable juror would have taken the instruction as nothing more than a warning not to consider punishment during the guilt phase. A single instruction to a jury may not be judged in artificial isolation but must be viewed in the context of the overall charge. Given the trial court's repeated instruction to the jury that the state bore the burden of proving guilt beyond a reasonable doubt, no reasonable juror could have concluded that the single instruction set forth above shifted the burden of proof to the defendant." (Internal citations and quotations omitted). Id.
 {¶ 21} Here, we view the trial court's instruction regarding "guilt or innocence" in the context of the overall charge which included proper instructions regarding reasonable doubt. See id. In light of the trial court's proper instruction to the jury that Terry "is presumed to be innocent until his guilt is established *Page 11 
beyond a reasonable doubt", and further, that Terry "must be acquitted unless the State produces evidence which convinces you beyond a reasonable doubt of every essential element of the crime charged", we find no abuse of discretion in the trial court's instructions. Terry's second assignment of error is overruled.
 III. {¶ 22} Terry's assignments of error are overruled, and the judgment of the Summit County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30. *Page 12 
Costs taxed to Appellant.